Good morning. My name is George Brawley. I'm from Ada, Oklahoma. Your Honors, this question about Rule 17c and its application to this particular type of proceeding, unfortunately, this case is not unique. There's a large number of similar cases with similar issues that have circulated around the United States arising out of a similar set of facts with a birth injury. I think there's two pending right now in the Eastern District of Oklahoma. Inevitably, when many of these cases are settled, the issue arises as to how the settlement agreement is going to be approved and whether or not there's a conflict of interest between the parents who are claimants and the catastrophically injured child who is completely unable to participate and whether that child has its interests protected. It occurs to me that Judge Wisdom, in the case we've cited in Roberts v. Ohio, had the matter exactly correct. That somebody has to stop and think about whether or not a guardian ad litem is appropriate at the time that one of these cases is settled. And in the number of these that I've done in the past, it's always happened. As I pointed out in the brief, the United States Department of Justice has routinely done this in other cases. Closely similar cases, one cited in the brief was Carmen v. USA. And the U.S. Attorney for the Department of Justice in that case joined in a joint motion under Rule 17c and said, in this case, both parents and their minor child are claimants, period. A guardian ad litem is necessary to ensure that there is no conflict of interest between plaintiffs. In this case, the parents were the next of friend, weren't they? I'm sorry, I did not hear you. In this case, the parents were the next of friend of the disabled child. Is that correct? Yes, ma'am. Okay, and that makes it different than Roberts because the grandmother there was not a next of friend or guardian or anything else. Is that correct? Yes, but it almost makes it worse. Well, I mean, in Roberts, the court actually distinguished between the two and indicated that a next friend is the alter ego of a guardian ad litem, meaning that it would serve the same function. Yeah, but in the Roberts case, there wasn't a conflict of interest that was inherent between competing people, between three people in this case, a mother, a father, not married, that are seeking claims out of a common fund and seeking to have that allocation determined in their favor or their child's favor. There's an inherent conflict of interest there that is precisely the same as it was in Carmen v. United States, in which the Department of Justice said categorically without reservation that there's a conflict of interest. I would point out that in the facts of this case, unlike the facts in Carmen, that they're dramatically more impressive. In Carmen, the parents had a 13-year stable relationship as married. The father was a Navy serviceman. The mother was a former Navy service officer. They had two other children. It was a stable relationship when this third child, Carmen, came along. Counsel, would it change anything if the district court in this case had appointed the parents as guardian ad litem? Well, if the district court had done so and had made a factual finding after an investigation that there was no conflict of interest, then I think that could have been done, and I think Justice Wisdom outlined the way that that could be done. Assume there was a conflict of interest, but the district court made the appointment anyway. Doesn't that start clocks running? I mean, that's one of the big problems you have here is it's been so long. Yes. On the other hand, if the court had appointed a guardian ad litem and the guardian ad litem was truly independent without a conflict, there wouldn't have been an approval of that trust agreement, which is at the root of this problem at the time. This child has been a minor, and almost expeditiously after this child turned 18, this action proceeded, and prior to the time this child became an adult and there were, in fact, guardians for this 18-year-old, there was nobody there to prosecute this thing on behalf of this 18-year-old, except potentially the conflicted parents. Now, the parents, was the district court allowed to recognize the state court's appointment of the parents as guardian ad litem? Or is it your contention that they had to do it separately? Well, the state court did not appoint the parents as guardian ad litem. As a matter of fact, the state court refused to approve the settlement and did so rather summarily. What the state court did was to say the parents can act as the guardian of the estate of the child, but not as a guardian ad litem. So what's the difference? Well, a guardian ad litem arises where there's a conflict. There was no evidentiary hearing before the state judge to determine whether or not there was a conflict of interest. The settlement agreement was actually presented to Judge McClain, and I've known Judge McClain. I've litigated in front of him, and he's now retired. It was presented to him sometime late on the morning of October 25, 2001. And about 25, 20, 25 minutes later, the request that he approve the settlement, which included 59 pages of trust agreements that are extraordinarily intricate and complex, that request that he approved those was withdrawn. And at that point in time, the parties commenced the effort to arrange to have a hearing later that same day, halfway across the state of Oklahoma in Muskogee. And the parties drove over there, and they started a hearing at 245. Okay, let me ask you this. So that's a little bit different than he refused to approve the trust agreement. They probably got the impression from speaking with him that he wasn't going to approve that 60-page trust agreement that morning, but they ultimately withdrew the request, and he didn't rule on it. Well, if they withdrew the request, I think he would not have the ability to rule on it. Right. So he didn't. I mean, it's not fair to say he rejected it. Certainly not on the merits. I mean, he didn't even have time. I don't think I've said that he rejected it. What I've said is that he refused to rule on it, and it was withdrawn. Well, he didn't rule on it. I don't know he refused to rule on it. And it was removed by the United States to federal court, right? Well, the whole case was in federal court. What happened was if somebody wanted a judge to approve a settlement, they had asked the state court judge to do it for whatever set of circumstances there were because we don't know for sure. And we don't know why, but they decided ultimately that they should do it in the federal court. And so then they drove to the state court. They had a 23-minute hearing in front of the judge in state court in which a settlement agreement that involved, you know, 100 pages or more of documents was approved by the court. There was nobody there to represent independently the interests of this minor child. Well, again, you're ignoring the fact that the parents were appointed as the next friend of the child. You don't like that appointment, but it in fact happened. And so the child was technically represented at the hearing. I think, Your Honor, taking everything you've just said at its face value, it begs the question. Rule 17C requires somebody to make an inquiry as to whether or not a conflict exists. There is no evidence that anybody ever made that inquiry as to whether or not a conflict exists. Well, I beg to differ on 17C. It says an infant or incompetent person who does not have a duly appointed representative. Here we had the parents as the next friend. And while you may be unhappy with that appointment and how things turned out, the question for us is whether there is a procedural, proper procedural method by which you can reopen that long-closed decision, which means we need to focus on 60B-4, which you've argued, and whether you've argued that the court lacked jurisdiction under 17C. Isn't that your argument, why we can reopen? Yes, ma'am. If there was a conflict of interest, which I submit an evidentiary hearing would reveal to be absolutely the case, and for which the available circumstances suggest strongly that there was, and so if there was such an evidentiary hearing, which there was not, then I think the conflict of interest would have become clear and manifest and would have required a guardian ad litem that was independent of the parents to participate in the allocation of the limited settlement fund. I would also point out that we would all be much better informed if we had a copy of the transcript. What's the conflict of interest? You say that the intervener, excuse me, that the next friend, Millard, were not married. Does the record indicate whether they had any other children together? It does. They were 22, 23 years old. They had no other children. They were not married. They had a substantial criminal record involving the use of drugs. That's in the record in this case, in the docket in the Wemmings case. Is the issue here that the parents took the million bucks and blew it? I mean, that's what happened. I mean, you're not saying that a million was insufficient. It's only insufficient because the parents squandered it, so to speak. Your Honor, unfortunately, the issue is more complex than that. What happened was the parents were given some cash. A small annuity was purchased for the parents. And then a separate trust was set up as a quasi-medical support trust. And then still a separate trust was set up as a reversionary medical trust, into which I think about $1,300,000 was placed. But part of that came back out to the parents. Yeah, and that's the $980 per month, right? I'm sorry, per week that the parents were receiving. Is that correct? No. They got that for six years. And at that time, Barbara, who was the grandmother, and I think she's the paternal grandmother, is caring for the child and aware that this money is being paid out every month to parents who aren't in the picture at all. You have to wonder why nothing was done during that six-year period while the trust on the annuity was bled. Well, so let me try and explain this. The grandmother was living in a house that had been purchased with money that the parents got from the settlement. And there were two subsequent children that were born to those two individuals. And the grandmother ended up taking care of all three of those in that house. Shortly after I was asked to get involved in this matter, I arranged for the probate court in Garvin County, Oklahoma, to basically impose a constructive lien on all of those assets, including the home and the payments that you're referring to, in order to try and support this child. None of that is the real problem. The problem is in the 43-page irrevocable reversionary trust. There's where the problem is. Because at the time this was done, the provisions of this trust were so onerous that this trust is completely illusory. If any of you were to start in and try and read this trust and decipher it, which I don't recommend. I've been dealing with trusts like this since 1993. If I sit down, if the bank calls me up and asks me a question about this trust, I have to sit down with it with all my prior notes. And I'll end up spending an hour or two just to answer a single question, because the trust is deliberately convoluted. It is designed, and it says it's a medical care trust. But it cannot pay for medical care for a large number of things that this child routinely needs, such as a nurse to come to the home. It can't pay for that. But if he were institutionalized, it would pay, right? I actually did try to wade my way through that. No. As a matter of fact, that's part of the intricacies of the trust. And I'm glad you asked that question, Your Honor. If they put him in a, for instance, there's a wonderful home in 8 Oklahoma called McCall's Chapel School that takes care of kids like this. The trust will not allow the bank to pay for that child to be cared for in that home. The only thing that the bank can really care for is provide some occasional medications. And if the child, for instance, has a respiratory infection and goes to OU Children's Hospital in Oklahoma City in an acute care facility, not a home, not a nursing home, but an acute care facility, then the trust can pay for that. But it cannot pay for any relief care for the grandmother. It can't care if they put the child in a, you know, there used to be a state home. It's no longer there. But if it was still there, if they put them in that home, this trust could not pay any of that support. And it would all end up on the state of Oklahoma. And you're out of time. Good morning. My name is Elliot Davis, and I represent the United States of America. May it please the Court. Why don't you first tell us, is it true that this government reversionary non-revocable trust doesn't really cover anything? No, Your Honor. I think that's absolutely wrong. In fact, the restrictions in the trust are the only reason why the trust, the irrevocable trust, is available to pay for things that Mr. Lemmings now needs, because the trust, that the trustee allowed the other trust to waste, and apparently all of the other money is gone. So what's it paying for? Sure. You can look, in fact, in Prospective Interveners' opening brief in the district court. On page 31 of the appendix, they explain that the irrevocable medical trust pays right now over $30,000 a year for things like prescription medications, medical devices that Mr. Lemmings needs on a regular basis. So what happens when the other trust is completely depleted? Will it cover where Mr. Lemmings is going to live? No, Your Honor. The irrevocable medical trust, the terms, the irrevocable governmental trust, it covers things like acute medical treatment, inpatient medical care, prescription medications, medical devices, transportation between acute medical facilities, certain physical and rehabilitative therapies. Okay. So it doesn't do anything about how you care for him day to day when he doesn't need acute medical care. That's correct, Your Honor. That's the way the trust was negotiated and designed. In addition to other things that the trust pays for, the fact that funds remain in the irrevocable medical trust are available on page 159 of the appendix. You could see that in 2012. Funds in the trust were available to pay for $150,000 for acute medical treatment that Mr. Lemmings required. So if he could be hospitalized and have it called acute medical treatment, then he could be covered. But if he's not, then he has no money available. I wouldn't say there is no money available. The money is available under the terms of the trust. So, yes, money in the trust, the governmental trust is available for acute medical care and certain inpatient medical treatment, but it is not available on, you know, for 24-7 in-home care. But the question is not, you know, this is not an opportunity, and the proceedings in 2017 below, were not an opportunity to relitigate the fairness of the settlement. The question, as I think Your Honors appreciate, is whether the settlement in 2001 should be set aside as void. And plainly under the law, it cannot. The Supreme Court and the United Student Aid Funds and this Court and the Geschwinden VTA cases have made clear that a judgment cannot be set aside even for, you know, mere jurisdictional error. Rather, there must be no arguable basis for the jurisdictional decision. And here there plainly was, at the absolute minimum, an arguable basis for the district court's decision to approve the settlement on behalf of Lance Lemings. The decision to appoint a guardian ad laitem is controlled by Rule 17c. And at the time, the first sentence of Rule 17c stated, whenever an infant or incompetent person has a representative such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. And then the second sentence says, an infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad laitem. Now, Judge McHugh, as you correctly pointed out, the parents were Mr. Lemings's next friends at the time of the settlement and before. Moreover, the record demonstrates that they were also appointed that morning in State Court as Mr. Lemings's general guardians. And you can see that at two places in the record. You can see that in Prospective Intervenors, opening motion before the district court, and that is on page 34 of the appendix, and that's in paragraph 39b, where Prospective Intervenors affirmably stated to the district court that Mr. Lemings's parents were appointed by the State Court as the guardians of his estate. And as we explain in our briefing, guardians of the estate under Oklahoma law are general guardians. You can see that in addition in page 45 of the appendix in the 2017 State Court order that Prospective Intervenors attached to their opening motion, which discussed the appointment of the parents as general guardians for Lance Lemings. So under the first sentence of Rule 17c, the district court was absolutely correct in approving the settlement on behalf of Lance because he was represented by his parents as general guardians, and in the second sentence, as also as his next friends. On page 21 of our brief to this court, we point out that Wright and Miller explains that where a minor is represented by guardians that are okay under the laws of the forum state, federal courts generally cannot appoint guardians ad litem, and that makes great policy sense. It is not the judgment of federal district courts to second-guess the guardianship decisions of their state court counterparts. Now, as to the Prospective Intervenors, ask this court to adopt the cynical view that we cannot trust parents to represent the interests of their minors, and that whenever minors and their parents are parties to a lawsuit, district courts should second-guess parental decisions and second-guess state courts. I would point out, as we explain in our briefing, that theory has been rejected by the Fifth Circuit and the Eleventh Circuit and the Crose and Burke cases that we have cited to this court, and that's what I have. Can I ask you a question about the transcript? Yes. So it seems that everybody was drawing a pretty hard line about letting the appellants, in this case, have the fairness hearing transcript. Did you object to that below? Yes. Why? So a month after briefing on Prospective Intervenors' principal motion had closed, so a month after the reply brief, they moved the court for the very first time to access the sealed fairness hearing transcript. We opposed on two grounds. The first ground is because they were non-parties to the suit, and they did not move for limited-purpose intervention to access the transcript, as this court has set forth is required under the United Nuclear Corp case. We did not hide this from the parties. We explained in our opposition brief, this is how you move to access the sealed hearing transcript, and they declined to do so. I guess my concern with this is, as the transcript goes, maybe it's a bit of form over function, because Mr. Lemmings, I mean, he speaks through these people who are his duly appointed guardians, and we just got finished with your argument that the federal court shouldn't be second-guessing the state's decision as to who that is. So since he was a party to the original proceeding through these next friends, I mean, shouldn't the fact that the state court appointed these new guardians, shouldn't they be able to step in his shoes and at least get access to his transcript? It seems to me that it's an effort to prevent them from coming forward with some evidence. Well, as to the idea that the transcript would provide evidence, nothing in the transcript, and for the record, the United States. Well, it's not in the record, so this is all. Well, I would say that the United States does not have a copy of that transcript either. We view that as a fishing expedition that has no bearing on the ultimate question as to whether the 2001 settlement was void. What if the fairness hearing transcript indicated complete lack of probing by the district court before she approved the settlement? Well, ultimately, again, the fairness of the settlement is not the – that is not the – under Rule 60, this is not an opportunity to re-litigate de novo the fairness of the settlement, and we also know that – Well, let me change it for you a little bit. What if the transcript indicated a very strong conflict of interest between the parents and the child in such a way that the district court would have been on notice that they couldn't be a fair representative? Wouldn't that then create a jurisdictional problem? I think if there was something in the fairness hearing transcript that only demonstrated that there was a facial conflict of interest between parents and child, that may have bearing on it. But I think we understand that was not the case because the district court memorialized her fairness opinion on page 162 of the appendix. It says, therefore, order to judge and decree that the court finds the settlement above reference to be fair, reasonable, and in the best interest of the minor child, Millard Lance Lemmings. This is also – you know, we have the added benefit that the – That's conclusory, though. That doesn't tell us what was said at the hearing, and it doesn't allow the prospective intervenors to, you know, represent something that might have been said at the hearing. There may be nothing in there. I'm just wondering. It just seems to me there's a strong effort to prevent these folks from even seeing the transcript when they're standing in the shoes of this young man as his guardians. I wouldn't say there was a strong effort. The United States affirmatively pointed out in our opposition brief the way that prospective intervenors could have moved to access the transcript, and they declined to do so. So could they do it now? I think they could do it now, but ultimately it's too late because the district court has already ruled that the settlement is not void, and that is one of the issues presented – that's the primary issue that is presented on this appeal. So you would say it's moot or futile? Yes. That was the second grounds that we moved – that we opposed on below, that even if they had intervened properly, it's futile because the briefing on the principal motion was complete. Clearly prospective intervenors did not believe that what was in the fairness hearing transcript was crucial to the ultimate question as to whether the settlement needed to be set aside until a month after briefing was complete. What if they found something that qualified under 60b-3 that justice requires? I'm sorry. Did you – 60b-6? 60b-6, justice so requires. Well, as presented before this Court, this Court explains in the Kaschner v. Freedomsor's decision in 1996, that regret over settlement, you know, what one views as a bad bargain, is not grounds for relief under Rule 60b-6. That's all that's been presented to this Court as it stands under Rule 60b-6. So the district court was well within its discretion to deny Rule 60b-6 relief on that ground. My question is, you know, Judge Carson has said, what if there's something in the transcript they haven't been able to see that shows more than just a bad bargain, but shows a flagrant conflict of interest or some kind of fraud on the Court? That – I guess it's possible, isn't it, it could trigger a ground that justice so requires? I cannot imagine there would be anything in that transcript that would rise to the level of what Your Honor is anticipating. Well, but that's – the question is a hypothetical question. What if there is? If there is, then, yes. If there is something in the transcript that would satisfy Rule 60b-6 or Rule 60b-4, then yes. Like the – then perhaps those are grounds. But prospective interveners have the opportunity before they file this – before they file their motion below to ask for the transcript. They could have moved for a limited purpose intervention before they even filed the Rule 60b-4. I understand that. But if there were something in the transcript, then that would suggest that this underlying jurisdictional argument is not really a jurisdictional argument. I mean, if there's no jurisdiction, there's no jurisdiction whether there's something in the transcript or not. Correct? Right. So under this Kokanen case that's referenced. No. The only – the only way the district court would have jurisdiction to do anything is under Rule 60, because the case below was – you know, after the settlement there was a joint dismissal, a voluntary dismissal with prejudice. So Rule 60 is the only avenue for prospective interveners to reopen the case. And 60b-6 would be what we'd be under if there were something of the nature that Judge Carson has suggested. Yes. So there is something that is so flagrant in there. But again, prospective interveners have missed that opportunity. But if they – if they are representing as the guardians of someone who was a party to that previous proceeding, why do they need to intervene? They represent a party. It's a request by a party for a copy of that fairness hearing transcript. Well, that was something that, you know, we never understood below as to why counsel did not represent Mr. Lemmings directly. And I have some theories on to that, but that would involve going outside of the record. What I will say is that just as plaintiffs are the masters of their complaint, movants are the masters of their motion. And they have described themselves throughout the record. You can see on pages 27, 38, and 295 of the appendix. They describe themselves as interveners looking to intervene in the case. So they have styled themselves as non-parties, and that is how the United States has treated them consistently throughout this litigation. So to the extent, you know, they could have represented Mr. Lemmings as directly as counsel, and if he were to move for the fairness hearing transcript, we would not have opposed on those grounds, though we would have opposed on futility prospective interveners if they want to. So hold on a minute. I think I thought you told me a minute ago that you wouldn't have opposed them getting the transcript if they would have asked for it right. As you invited them to is sort of how I understood you were saying it. Now you're telling me you would have opposed it on futility. Right. We would have opposed it on futility grounds. If Mr. Lemmings, represented by counsel, had moved in 2017 before filing the Rule 60 motion, before that motion was completed, to ask for the fairness hearing transcript, I don't think we would have had any objection to that. Our objection is twofold, is that they've styled themselves as non-parties and did not seek to get the transcript in procedurally appropriate fashion. They only asked for it a month after briefing on the Rule 60 motion was complete. So we viewed that as a complete fishing expedition in an attempt to shore up a completely infirm motion. So the district court, if she'd have been so inclined, she could have given them leave to seek that transcript and then supplement their briefing. You agree with that, don't you? Yeah, I would agree with that. But that's something, again, that's entirely from the district court's discretion. I think the standard of review for that decision is abuse of discretion. And could it be an abuse of discretion if you've got someone who is facially the same party who hasn't put things quite, checked the exact boxes? I mean, couldn't that be viewed as an abuse of discretion by the district court to prevent them from just accessing a transcript? I don't believe it could be an abuse of discretion where prospective intervenors have moved in a procedurally inappropriate function and deemed themselves something. Perhaps they could have made a better argument, but even then I don't think that's an abuse of discretion. Okay. And your time is up. Thank you. We would ask that this Court affirm the district court's decision in full. Thank you. Thank you for your argument today, counsel. And we will take this matter under advisory. Thank you.